**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Ameriswiss Technology, LLC

    v.

Midway Line of Illinois, Inc.;
and C.H. Robinson Worldwide, Inc.

                                Civil No. 11-cv-148-LM
                                Opinion No. 2012 DNH 173

Massachusetts Bay Insurance
Company a/s/o Ameriswiss
Technology, Inc.

    v.

C.H. Robinson Worldwide, Inc.


**O R D E R**

    This case arises out of a single-vehicle accident that
destroyed thirteen pieces of machinery owned by Ameriswiss
Technology, LLC ("Ameriswiss").  When they were destroyed,
Ameriswiss's machines were being trucked to New Hampshire by
Midway Line of Illinois, Inc. ("Midway").  Midway had been hired
by C.H. Robinson Worldwide, Inc. ("Robinson"), which itself had
been hired by Ameriswiss to arrange for the transportation of
its machines.  Ameriswiss is suing Robinson for negligence
(Count I) and breach of contract (Count II).  Ameriswiss also
asserted a claim against Midway under the federal Carmack
Amendment, 49 U.S.C. § 14706, and default has been entered

against Midway in favor of Ameriswiss.  See doc. no. 33.
Robinson has asserted a cross claim against Midway for
indemnification.  Ameriswiss's suit has been consolidated with a
three-count subrogation action that was brought by Ameriswiss's
insurer, Massachusetts Bay Insurance Company ("MB Insurance"),
against Robinson, Midway, and the driver employed by Midway.[1]
Before the court is Robinson's motion for summary judgment on
both of Ameriswiss's claims and all three of MB Insurance's
claims.  Ameriswiss has objected; MB Insurance has not.  For the
reasons that follow, Robinson's motion for summary judgment is
granted.

## Summary Judgment Standard

"To prevail on summary judgment, the moving party must show
that 'there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law.'"  Markel
Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 29 (1st Cir. 2012)
(quoting Fed. R. Civ. P. 56(a)).  "The object of summary
judgment is to 'pierce the boilerplate of the pleadings and
assay the parties' proof in order to determine whether trial is
actually required.'"  Dávila v. Corporación de P.R. para la

---

[1] In that second action, Robinson asserted cross claims for
contribution and indemnification against Midway, but Midway and
its driver have been dismissed from that action, without
prejudice.  See doc. no. 39.

<u>Diffusión Pública</u>, 498 F.3d 9, 12 (1st Cir. 2007) (quoting <u>Acosta v. Ames Dep't Stores, Inc.</u>, 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists."  <u>Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.</u>, 673 F.3d 1, 9 (1st Cir. 2012) (quoting <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006)).  "However, 'a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden.'"  <u>Sánchez-Rodríguez</u>, 673 F.3d at 9 (quoting <u>DePoutot v. Raffaelly</u>, 424 F.3d 112, 117 (1st Cir. 2005)).  "Rather, the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim."  <u>Sánchez-Rodríguez</u>, 673 F.3d at 9 (quoting <u>Soto-Ocasio v. Fed. Ex. Corp.</u>, 150 F.3d 14, 18 (1st Cir. 1998)) (internal quotation marks omitted).

**Background**

Robinson has submitted a statement of material facts that meets the requirements of Local Rule 7.2(b)(1).  Ameriswiss has not responded by submitting "a short and concise statement of material facts, supported by appropriate record citations, as to which [it] contends a genuine dispute exists so as to require a trial."  LR 7.2(b)(2).  Accordingly, "[a]ll properly supported material facts set forth in [Robinson]'s factual statement [document no. 41-3] shall be deemed admitted."  Id.  Based upon the application of Local Rule 7.2(b)(2), the following facts, drawn from Robinson's statement, are undisputed.

Ameriswiss, which is headquartered in Holderness, New Hampshire, buys used Escomatic machines and reconditions them for resale.  On September 20, 2010, Ameriswiss purchased eleven used Escomatic machines, along with a grinding machine and an optical projector, all of which were located in Morrison, Illinois.  For the thirteen machines, it paid $40,000, plus a twelve-percent commission, for a total outlay of $44,800.

Ameriswiss then contracted with Robinson to arrange the shipment of its machines from Illinois to New Hampshire.  The parties agree that the terms of their contract are expressed in an e-mail from Robinson's Jonathan Dunlop to Ameriswiss's Heidi Luscher that states, in full: "Morrison, IL > Holderness, NH

4

$2600 all inclusive." Def.'s Mot. Summ. J., Dunlop Aff., Ex. 3 (doc. no. 41-5), at 20. After Ameriswiss contracted with Robinson, Robinson engaged Midway to haul the machines. On October 15, the machines were loaded onto one of Midway's trucks. The next day, they were destroyed when the truck was involved in a single-vehicle accident in New York.

Based on the foregoing, Ameriswiss asserts that Robinson is liable for negligence because it breached its duty of care by failing to select a competent carrier to transport the machines, and is liable for breach of contract because it failed to safely transport the machines and failed to secure appropriate insurance for them while they were in transit. MB Insurance, in turn, asserts that Robinson: (1) by virtue of contracting with Midway, is liable for negligently transporting Ameriswiss's machines; (2) breached its duty of care as a common carrier; (3) and breached its duty of care as a bailee.

## Discussion

Robinson moves for summary judgment, arguing that: (1) both of the ordinary negligence claims (Ameriswiss's Count I and MB Insurance's Count I), MB Insurance's common-carrier negligence claim (Count II), and its bailment claim (Count III) are preempted by federal law; (2) even if not preempted, the

ordinary negligence and bailment claims fail as a matter of law;[2] (3) Ameriswiss's claim for breach of contract fails as a matter of law; and (4) even if it is liable to Ameriswiss, its liability is limited to $44,800, the amount that Ameriswiss paid for the machines.  Ameriswiss disagrees, categorically.  As noted, MB Insurance remains on the sidelines.

## A. Robinson's Role

Before mounting its substantive arguments for summary judgment, Robinson devotes several pages of its memorandum of law to what it calls "a threshold issue," Def.'s Mem. of Law (doc. no. 41-1), at 11, namely, whether its actions were those of a transportation broker or those of a motor carrier.[3]

_____

[2] Robinson does not appear to argue that MB Insurance's common-carrier negligence claim fails as a matter of law.

[3] The relevant statute defines "[t]he term 'motor carrier' [to] mean[ ] a person providing commercial motor vehicle . . . transportation for compensation."  49 U.S.C. § 13102(14).  That statute defines the term "broker" to

> mean[ ] a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2).

Robinson argues that it is beyond genuine dispute[4] that it acted, at all times, as a transportation broker.  After asserting that it was a broker rather than a motor carrier, Robinson points out that

> [u]nder long-standing principles of transportation law, cargo damage claims against <u>interstate motor carriers</u> are determined under the Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C. § 14706 ("ICCTA"), whereas that statute does not govern (or even mention) brokers in the scheme of interstate cargo loss and damage liability.  <u>Chubb Group of Insurance Companies v. H.A. Transportation Systems, Inc.</u>, 243 F. Supp. 2d 1064, 1068-1069 (C.D. Cal. 2002).

Def.'s Mem. of Law (doc. no. 41-1), at 11.  Ameriswiss counters by contending that there is a genuine issue of material fact as to whether Robinson was a motor carrier in this case.

In Robinson's view, determining whether it was a transportation broker or a motor carrier "will dictate what law should be applied to Ameriswiss' claims."  Def.'s Mem. of Law (doc. no. 41-1), at 11.  And, it goes on to cite <u>Chubb</u> for the proposition that "the Carmack Amendment [49 U.S.C. § 14706(a)] does not apply to brokers."  243 F. Supp. 2d at 1068-69 (citing <u>Prof'l Commc'ns, Inc. v. Contract Freighters, Inc.</u>, 171 F. Supp. 2d 546, 551 (D. Md. 2001); <u>Indep. Mach., Inc. v. Kuehne & Nagel,</u>

---

[4] "[A]n issue of fact is genuine if 'a reasonable jury could resolve it in favor of either party.'"  <u>Markel</u>, 674 F.3d at 29-30 (quoting <u>Basic Controlex Corp. v. Klockner Moeller Corp.</u>, 202 F.3d 450, 453 (1st Cir. 2000)).

Inc., 867 F. Supp. 752, 761 (N.D. Ill. 1994); Adelman v. Hub
City L.A. Terminal, 856 F. Supp. 1544, 1547-48 (N.D. Ala.
1994)).  But, because Ameriswiss does not assert a Carmack
Amendment claim against Robinson, it is not clear what Robinson
gains by establishing that it was a broker rather than a motor
carrier, which leaves the court wondering how Robinson's status
is a material fact in the first instance.  See Markel, 674 F.3d
at 29 ("A fact is material if it 'might affect the outcome of
the suit' under governing law.") (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)).

   Accordingly, the court bypasses the question of Robinson's
status and moves to Robinson's arguments for summary judgment.

     B. Negligence & Bailment

   In Count I of its complaint, Ameriswiss asserts that
Robinson "owed [it] a duty to use reasonable [care] in the
selection of a carrier to transport [its] property," Compl.
(doc. no. 1) ¶ 30, and that Robinson "breached its duty of care
. . . by failing to choose a trustworthy carrier competent to
transport [its] property," id. ¶ 31.  In Count I of its
complaint, MB Insurance asserts that the accident that destroyed
Ameriswiss's equipment "was due to the negligence of the
defendants in the transportation of the equipment," Compl. (doc.

no. 1 in 11-cv-266-JL) ¶ 17, and that "[a]s a dispatcher, CH Robinson is responsible for the acts of its contractors," id. ¶ 11.  In Count II, MB Insurance asserts that defendants breached their duties of care as common carriers.  See id. ¶ 22.  In Count III, MB Insurance asserts that "[d]efendants accepted [Ameriswiss]'s goods for bailment," id. ¶ 24, and breached their duties and obligations to return the goods in an undamaged condition, see id. ¶¶ 25-26.

Robinson argues that it is entitled to summary judgment on the ordinary negligence claims asserted by Ameriswiss and MB Insurance because there is no evidence that it negligently selected Midway to transport Ameriswiss's machines.  It further argues that those claims, along with the claims stated in Counts II and III of MB Insurance's complaint, are all preempted by federal law.  Ameriswiss contends that its claims are not preempted, and that genuine issues of material fact preclude summary judgment.  Robinson's preemption argument carries the day.

The liability of interstate motor carriers to shippers[5] is governed by federal law.  Under what is known as the Carmack Amendment to the Interstate Commerce Act:

---

[5] "Shipper" is the term of art that denotes a person whose goods are transported by a carrier.  See 49 U.S.C. § 13102(13).

> A carrier providing transportation or service . . .
> shall issue a receipt or bill of lading for property
> it receives for transportation under this part.  That
> carrier and any other carrier that delivers the
> property and is providing transportation or service
> . . . are liable to the person entitled to recover
> under the receipt or bill of lading.  The liability
> imposed under this paragraph is for the actual loss or
> injury to the property caused by (A) the receiving
> carrier, (B) the delivering carrier, or (C) another
> carrier over whose line or route the property is
> transported in the United States . . .

49 U.S.C. § 14706(a)(1).

"The Carmack Amendment effectively creates a federal statutory remedy on the bill of lading against both the originating and destination carrier."  Rankin v. Allstate Ins. Co., 336 F.3d 8, 17 (1st Cir. 2003).  "To make a prima facie case under the Carmack Amendment, a plaintiff must show 1) delivery to the carrier in good condition; 2) arrival in damaged condition; and 3) the amount of damages caused by the loss." Camar Corp. v. Preston Trucking Co., 221 F.3d 271, 274 (1st Cir. 2000) (citing Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 137-38 (1964); D.P. Apparel Corp. v. Roadway Express, Inc., 736 F.2d 1, 2 (1st Cir. 1984)).  "If [a] plaintiff succeeds in establishing [a prima facie case], 'the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.'"  Center v. Roadway

10

Express, Inc., Civ. No. 06-11168-DPW, 2008 WL 3824782, at *3 (D. Mass. Aug. 8, 2008) (quoting Mo. Pac., 377 U.S. at 138). Presumably in exchange for imposing "something close to strict liability upon originating and delivering carriers," Rankin, 336 F.3d at 9; see also PNH Corp. v. Hullquist Corp., 843 F.2d 586, 589 (1st Cir. 1988), the Carmack Amendment limits recovery to actual damages, see 49 U.S.C. § 14706(a)(1); Rankin, 336 F.3d at 16.

"It is accepted . . . that the principal purpose of the [Carmack] Amendment was to achieve national uniformity in the liability assigned to carriers." Rini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir. 1997). After discussing the United States Supreme Court's decision in Adams Express Co. v. Croninger, 226 U.S. 491 (1913), the court of appeals in Rini went on to explain:

> The preemptive effect of the Carmack Amendment over state law governing damages for the loss or damage of goods has been reiterated by the Supreme Court in many cases and is well established. See, e.g., Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28 (1936) (claim of negligence for failure to deliver a film on time is preempted); Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597 (1915) (state statute imposing a penalty for failure to pay claims to a shipper within 40 days is preempted).

104 F.3d at 504 (parallel citations omitted). In other words, Rini stands for the proposition that the Carmack Amendment

impliedly preempts state regulations related to damages for the
loss or destruction of property during the course of interstate
shipment.

Under the doctrine of implied preemption, "Congress may
implicitly preempt state law by creating a scheme of federal
regulation so pervasive as to make reasonable the inference that
Congress left no room for the States to supplement it."
Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008) (quoting
Barnett Bank of Marion Cty., N.A. v. Nelson, 517 U.S. 25, 31
(1996); citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218,
230 (1947)) (internal quotation marks and brackets omitted).
Under the doctrine of express preemption, "Congress can include
'language in the federal statute that reveals an explicit
congressional intent to pre-empt state law.'" Fitzgerald, 549
F.3d at 52 (quoting Barnett Bank, 517 U.S. at 31).

In addition to the implied preemptive effect of the Carmack
Amendment, described above, the power of the states to regulate
the interstate transportation of goods is also expressly
constrained by the Interstate Commerce Commission Termination
Act ("ICCTA"), which provides, in pertinent part:

> a State . . . may not enact or enforce a law,
> regulation, or other provision having the force and
> effect of law related to a price, route, or service of
> any motor carrier . . . or any motor private carrier,

broker, or freight forwarder with respect to the transportation of property.[6]

49 U.S.C. § 14501(c)(1).[7]

Based on the foregoing, and as Judge Lindsay's opinion in Chatelaine, Inc. v. Twin Modal, Inc., 737 F. Supp. 2d 638 (N.D. Tex. 2010) explains quite clearly, there are two potential theories of preemption available in this area of the law.  The first is based on implied preemption and the Carmack Amendment.  See id. at 641.  The second is based on express preemption and the ICCTA.  See id. at 641-42.

If Robinson was a carrier rather than a broker, as Ameriswiss appears to contend, then Ameriswiss's negligence claim would certainly be barred by the implied preemptive effect of the Carmack Amendment.  See Noble v. Wheaton Van Lines, Civ. No. 09-10564-GAO, 2010 WL 3245421, at *6 (D. Mass. Aug. 17,

---

[6] For purposes of this provision, "[s]tate common law counts as an 'other provision having the force and effect of law.'" Non Typical, Inc. v. Transglobal Logistics Grp. Inc., Nos. 10-C-1058, 11-C-0156, 2012 WL 1910076, at *2 (E.D. Wis. May 28, 2012) (citing Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 233 n.8 (1995); Morales v. Trans World Airlines, Inc., 504 U.S. 374, 388 (1992)).

[7] The ICCTA preemption provision "had been part of the Federal Aviation Administration Authority Act ('FAAAA') passed by Congress in 1994."  Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc., 284 F. Supp. 2d 284, 285 (D. Md. 2003) (citing 49 U.S.C. § 11501(h)(1); Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc., 972 F. Supp. 665, 668 (N.D. Ga. 1997)).

2010) ("[w]ith limited exceptions, the Carmack Amendment provides the exclusive cause of action against a carrier for loss or damage to goods that occurred as a result of interstate transport") (citation omitted).  Thus, Ameriswiss's argument that Robinson was a carrier would seem to undermine its argument that its negligence claim against Robinson is not preempted.  Be that as it may, the court need not determine whether Robinson was a carrier or a broker because even if Robinson was a broker, Ameriswiss's negligence claim and all three of MB Insurance's claims are impliedly preempted by the Carmack Amendment and expressly preempted by the ICCTA.

In York v. Day Transfer Co., a shipper brought negligence claims against several defendants, including a transportation broker.  See 525 F. Supp. 2d 289, 293 (D.R.I. 2007).  In the course of deciding that the plaintiff's common-law claims against the broker were impliedly preempted by the Carmack Amendment, Judge Smith explained:

> The principle purpose of the Carmack Amendment was "to achieve national uniformity in the liability assigned to carriers." Rini, 104 F.3d at 504; see, e.g., New York, New Haven & Hartford R.R. Co. v. Nothnagle, 346 U.S. 128, 131 (1953); Atchison, Topeka & Santa Fe Ry. Co. v. Harold, 241 U.S. 371, 378 (1916).  Through the enactment, "Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject." Rini, 104 F.3d at 504.  The Carmack Amendment exists to provide "a measure of

predictability for interstate carriers in the exposure
to damages they face." Gordon [v. United Van Lines,
Inc.], 130 F.3d [282,] 287 [(7th Cir. 1997)]. To
accomplish this goal, "the Carmack Amendment preempts
state law claims arising from failures in the
transportation and delivery of goods." Smith v.
United Parcel Serv. (UPS), 296 F.3d 1244, 1246 (11th
Cir. 2002).

> . . . .

> The Carmack Amendment, with few exceptions,
"provide[s] the exclusive cause of action for loss or
damage to goods arriving from the interstate
transportation of those goods by a common carrier."
Harris v. Crown Moving, No. 07-CV-126-JLQ, 2007 WL
1724299 at *2 (E.D. Wash. June 14, 2007); Hall [v. N.
Am. Van Lines, Inc.], 476 F.3d [683,] 688 [(9th Cir.
2007)].

York, 525 F. Supp. 2d at 297-98 (parallel citations omitted).

Then, in response to an argument by the plaintiffs, Judge Smith

ruled:

> [W]hile Plaintiffs allege Day to have been negligent
in its engagement of Williams Moving to facilitate the
movement of the Yorks' property, their attempt to
circumvent the Carmack Amendment fails. The role
played by Day clearly falls within the Carmack
Amendment, particularly where the Amendment defines
covered transportation services as being "services
related to that movement, including arranging for,
receipt, delivery, elevation, transfer in transit, . .
. storage, handling, packing, [and] unpacking."

Id. at 301 (quoting 49 U.S.C. § 13102(23)(B); citing Glass v.

Crimmins Transfer Co., 299 F. Supp. 2d 878, 884 (C.D. Ill.

2004)); but see Chatelaine, 737 F. Supp. 2d at 641 (ruling that

because defendant was broker rather than carrier, the Carmack

Amendment did not apply, thus precluding the availability of implied preemption under that statute).  Based on the persuasive reasoning of York, this court has little difficulty concluding that the claims stated in Count I of Ameriswiss's complaint and the claims stated in Counts I-III of MB Insurance's complaint are all impliedly preempted by the Carmack Amendment, notwithstanding Robinson's role as a broker.

However, even if those claims are not subject to implied preemption under the Carmack Amendment, they are expressly preempted by the ICCTA.  In Kashala v. Mobility Services International, LLC, in which the plaintiff brought a negligence claim against a transportation broker, Judge Hillman ruled that "any negligence claim against Mobility in its capacity as a broker is preempted by another section of the ICCTA, namely, 49 U.S.C. § 14501(b)(C) [sic]," Civ. No. 07-40107-TSH, 2009 WL 2144289, at *5 (D. Mass. May 12, 2009).[8]

District courts in other circuits have reached similar conclusions with respect to a variety of state common-law tort claims against brokers.  In Non Typical, Inc. v. Transglobal Logistics Group, Inc., after noting that "the [preemption]

_____

[8] Judge Hillman also noted that "[e]ven if 49 U.S.C. § 14501(b)(c) [sic] did not apply, the Carmack Amendment would preempt all state and common law claims."  Kashala, 2009 WL 2144289, at *5.

statute expressly lists brokers," Nos. 10-C-1058 & 11-C-0156,
2012 WL 1910076, at *3 (E.D. Wis. May 28, 2012), Judge Griesback
granted judgment on the pleadings to a broker because the
shipper's negligence claims were preempted by the ICCTA, see id.
Judge Griesback is not alone.   See, e.g., Chatelaine, 737 F.
Supp. 2d at 642-43 (granting broker's motion to dismiss claims
for negligence and negligent hiring, based on express
preemption); Huntington Operating Corp. v. Sybonney Express,
Inc., Civ. No. H-08-781, 2010 WL 1930087, at *3 (S.D. Tex. May
11, 2010) (granting broker's motion for summary judgment on
shipper's claims for negligence and negligent misrepresentation,
based on express preemption).   Finally, in an opinion that is
instructive but not precisely on point, Judge Davis granted a
broker's motion to dismiss a motor carrier's tort claims against
it, explaining that the "applicability [49 U.S.C. § 14501(c)(1)]
hinges on the subject matter and effect of each claim, rather
than on the identity of the parties in the litigation." Yellow
Transp., Inc. v. DM Transp. Mgmt. Servs., Inc., No.
Civ.A.2:06CV1517-LDD, 2006 WL 2871745, at *3 (E.D. Pa. July 14,
2006).   Here, of course, the subject matter of the litigation is
the destruction of Ameriswiss's machines while they were being
transported from one state to another.   In sum, not only are the
claims asserted in Ameriswiss's Count I and MB Insurance's

17

Counts I-III impliedly preempted by the Cormack Amendment, those claims are expressly preempted by 49 U.S.C. § 14501(c)(1).

There is some authority that, at first glance, might appear to support Ameriswiss's position on the preemption issue, but careful scrutiny reveals that authority to be unavailing.  In an order in a case in which he reached the merits of a shipper's state-law negligence claim against a transportation broker, Judge Matz wrote:

> The Carmack Amendment governs "motor carriers" and "freight forwarders."  49 U.S.C. §§ 14706(a) (1996).  The statute absolutely preempts all state common law claims against such carriers and freight forwarders.  Hughes Aircraft Co. v. North American Van Lines, Inc., 970 F.2d 609, 613 (9th Cir. 1992).  However, the Carmack Amendment does not apply to brokers.  See, e.g. Professional Communications, Inc. v. Contract Freighters, Inc., 171 F. Supp. 2d. 546, 551 (D. Md. 2001); Independent Machinery, 867 F. Supp. at 761; Adelman v. Hub City Los Angeles Terminal, 856 F. Supp. 1544, 1547-48 (N.D. Ala. 1994). Consequently, most courts hold that brokers may be held liable under state tort or contract law in connection with shipments.  Intercargo Ins. Co. v. Burlington Northern Santa Fe Railroad, 185 F. Supp. 2d. 1103, 1113-1115 (C.D. Ca. 2001) (applying California law to party that was neither a carrier nor a freight forwarder); Professional Communications, 171 F. Supp. 2d. at 551-52 (applying Florida and Maryland law of negligence to a motor carrier broker); Independent Machinery, 867 F. Supp. at 762 (applying state law to party that was neither a carrier nor a freight forwarder); Adelman, 856 F. Supp. at 1548-49 (same).

Chubb, 243 F. Supp. 2d at 1068-69 (footnotes omitted).

Here is the problem with Ameriswiss's reliance on Chubb. In Chubb, Judge Matz relied on the same rule that Judge Lindsay relied on in Chatelaine, i.e., the Carmack Amendment does not impliedly preempt state-law claims brought against brokers because brokers are not covered by the Carmack Amendment. But, there is no indication in the Chubb order that the broker in that case ever argued, as Robinson does here, that the shipper's claim was expressly preempted by 49 U.S.C. § 14501(c)(1). The same holds true for Intercargo, Professional Communications, Independent Machinery, and Adelman. Thus, the conclusion that is most appropriately drawn from Chubb is not that "most courts hold that brokers may be held liable under state tort . . . law in connection with shipments," 243 F. Supp. 2d at 1069, but, rather, that most courts hold that state tort claims against brokers are not impliedly preempted by the Carmack Amendment.

Robinson, however, unlike the brokers in Chubb, Intercargo, Professional Communications, Independent Machinery, and Adelman, is relying on the ICCTA and its express preemption provision. Because Chubb and the cases cited therein discuss only implied preemption under the Carmack Amendment, they run counter to Judge Smith's opinion in York, but do not stand for the proposition that 49 U.S.C. § 14501(c)(1) does not preempt state-law tort claims against transportation brokers. Thus, those

19

opinions do nothing to erode the persuasive reasoning of
Kashala, Non Typical, Chatelaine, and Huntington with regard to
the preemptive effect of 49 U.S.C. § 14501(c)(1).

The court concludes by acknowledging that preemption does
have a different effect on claims against motor carriers than it
has on claims against the other entities listed in 49 U.S.C.
14501(c)(1).  When a state common-law claim against a motor
carrier arising out of damage to cargo in interstate
transportation is preempted, a plaintiff still has a claim
against the carrier under the Carmack Amendment.  But, because
the Carmack Amendment creates a federal statutory remedy against
motor carriers only, when a state common-law claim against a
motor private carrier or a broker is preempted by 49 U.S.C. §
14501(c)(1), a plaintiff is left with no claim at all against a
defendant who has successfully invoked preemption.  While that
may seem to be an anomalous result of the interplay between the
ICCTA preemption provision and the Carmack Amendment, there is
no good basis for arguing that Congress did not intend that
result, given its interest in standardizing and simplifying the
adjudication of claims arising in the context of interstate
shipping.  See Rini, 104 F.3d 2d at 504.  Moreover, the ICCTA
preemption provision was enacted long after the Carmack
Amendment, see Robert D. Moseley, Jr. & C. Fredric Marcinak,

Federal Preemption in Motor Carrier Selections Cases Against
Brokers and Shippers, 39 Transp. L.J. 77, 79 (2012), and,
presumably, was enacted with the Carmack Amendment in mind.
Finally, it is worth bearing in mind that a plaintiff that loses
its common-law claim against an entity such as a broker is not
denied an avenue for recovery; such a plaintiff still has its
Carmack Act claim against the carrier.[9]

        To conclude, the claims stated in Count I of Ameriswiss's
complaint and Counts I-III of MB Insurance's complaint are
impliedly preempted by the Carmack Amendment and are expressly
preempted by 49 U.S.C. § 14501(c)(1).  For that reason, Robinson
is entitled to judgment as a matter of law on all four of those
claims.

        C. Breach of Contract

        In its complaint, Ameriswiss makes the following factual
allegations:

                Prior to completion of the purchase [of the
        machines that were destroyed], Ameriswiss contacted
        [Robinson] to make arrangements to have the Machines

---

        [9] Here, for example, Ameriswiss is in line to receive a
default judgment against Midway on its claim under the Carmack
Amendment.  Ameriswiss's default judgment against Midway might
be less lucrative than a recovery against Robinson in tort, and
while such a result would be disadvantageous to Ameriswiss, the
court cannot say that such a result runs counter to
congressional intent, as expressed in the ICCTA preemption
provision and the Carmack Amendment.

shipped by truck from Morrison, Illinois to
Ameriswiss's business location in Holderness, New
Hampshire.

Based on its discussions with [Robinson],
Ameriswiss hired [Robinson] to have the Machines
shipped by truck from Morrison to Ameriswiss's
business location in Holderness.

In turn, [Robinson] hired Midway to actually haul
the Machines by truck from Morrison to Holderness.

Compl. ¶¶ 14-16.  Based on those allegations, Ameriswiss

asserts, in Count II, that Robinson is liable for breach of

contract:

Pursuant to its agreement with Ameriswiss,
[Robinson] was obligated to transport safely or to
arrange for the safe transportation of the Machines
from Morrison to Holderness.

In addition, pursuant to its agreement with
Ameriswiss, [Robinson] was obligated to ensure that
the transportation of the Machines from Morrison to
Holderness was protected by appropriate insurance.

[Robinson] breached its agreement with Ameriswiss
in that it failed to transport safely the Machines
from Morrison to Holderness and it failed to ensure
that the transportation of the Machines from Morrison
to Holderness was protected by appropriate insurance.

Compl. ¶¶ 34-36.  While styled as a claim for breach of

contract, Ameriswiss's assertion that Robinson breached the

parties' agreement by failing to safely transport the machines

is best understood as a claim for breach of warranty,

specifically, a warranty that Ameriswiss's machines would not be

damaged in transit.  That said, the court turns to each of the

22

two theories of recovery advanced in Count II, the breach-of-warranty claim stated in paragraphs 34 and 36, for failure to safely transport the machines, and the claim stated in paragraphs 35 and 36, for failure to properly insure them.

### 1. Failure to Safely Transport

Robinson argues that it is entitled to summary judgment on Ameriswiss's claim that it breached the parties' agreement by failing to safely transport the machines because: (1) it agreed to do nothing more than arrange for a carrier to transport the machines; (2) it took all necessary precautions when doing so; and (3) "[n]othing in the record suggests Midway was not a duly qualified or competent . . . motor carrier [and that] there is [no] evidence that [it] knew or should have known of any fact to disqualify Midway from handling the load."  Def.'s Mem. of Law (doc. no. 41-1), at 19.  For its part, and notwithstanding its failure to identify factual disputes in the manner required by Local Rule 7.2(b)(2), Ameriswiss contends that Robinson is not entitled to summary judgment due to the existence of a genuine issue of material fact.

Under New Hampshire law, "[a] breach of contract occurs when there is a failure without legal excuse[ ] to perform any promise which forms the whole or part of a contract."  Lassonde

v. Stanton, 157 N.H. 582, 588 (2008) (quoting Poland v. Twomey, 156 N.H. 412, 415 (2007)).  Of course, a necessary prerequisite for a breach-of-contract claim is a contract.  "A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds."  Tessier v. Rockefeller, 162 N.H. 324, 339 (2011) (quoting Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006)).

Robinson argues that the only promise it made to Ameriswiss was that it would arrange for the transportation of its machines.  Necessarily, it argues that it did not warrant their safe delivery.  The complaint alleges no facts which, if proven at trial, would establish the existence of any such warranty in the agreement between Robinson and Ameriswiss.[10]  As best the court can tell from Ameriswiss's memorandum of law, it argues that summary judgment is precluded by factual disputes concerning: (1) its knowledge (or lack thereof) that Robinson was a broker rather than a carrier; and (2) its belief that the phrase "all inclusive" in the e-mail from Dunlop to Ms. Luscher was a warranty of safe delivery.  As Ameriswiss argues:

---

[10] Thus, it is difficult to see how Ameriswiss's breach-of-warranty claim could have survived a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

> [W]hile C.H. Robinson may be clear in its
> understanding of the transaction, Ameriswiss could
> reasonably have understood that "all inclusive" meant
> something entirely different.
>
> Here, Ameriswiss's view of the terms of the
> agreement find support in the facts discovered to
> date.  While C.H. Robinson may have set forth facts in
> support of its myopic view of the agreement, the facts
> are plainly disputed.  Thus, summary judgment is not
> appropriate.

Pl.'s Mem. of Law (doc. no. 49-1), at 20.

Robinson is entitled to judgment as a matter of law on the
breach-of-warranty claim.  Ameriswiss takes the position that
the entire agreement between the parties is contained in the e-
mail from Dunlop to Ms. Luscher.  According to Ameriswiss: "the
Court need look no further than Mr. Dunlop's email to . . .
Luscher setting forth the scope of the agreement between
Ameriswiss and C.H. Robinson."  Pl.'s Mem. of Law (doc. no. 49-
1), at 13; see also id. at 19 ("the actual agreement between
C.H. Robinson and Ameriswiss is simple to repeat – '$2,600, all
inclusive.'").

Without reference to any evidence of record or any legal
authority, Ameriswiss defines "all inclusive" to mean "the pick
up of the shipment at [its] point of origin, delivering the
shipment to [its] destination, and covering the shipment for
loss or damage."  Pl.'s Mem. of Law (doc. no. 49-1), at 13.
But, Ameriswiss does not allege or argue that anyone from

25

Robinson made an oral promise to warrant the safety of the
delivery and has not produced evidence of any such oral promise.
Thus, the question before the court, to be resolved as a matter
of law, is this: do the two words "all inclusive" communicate a
promise by Robinson to warrant the safe delivery of Ameriswiss's
machines?  They do not.  Moreover, because the question before
the court is limited to construing the language of a writing
that, according to Ameriswiss itself, establishes the full scope
of the parties' agreement, Ameriswiss's belief that the
agreement included a warranty is irrelevant.  A valid contract
requires a meeting of the minds, see Tessier, 162 N.H. at 339,
and Ameriswiss has produced no evidence that anyone at Robinson
shared a belief that the term "all inclusive" included a
warranty of safe delivery.  Because Robinson did not warrant the
safe delivery of Ameriswiss's machines, Midway's failure to
safely deliver them did not result in a breach of the contract
between Robinson and Ameriswiss based on a breach-of-warranty
theory.

> 2. Failure to Insure

Ameriswiss also asserts in Count II that Robinson "breached
its agreement with Ameriswiss in that it . . . failed to ensure
that the transportation of the Machines from Morrison to
Holderness was protected by appropriate insurance."  Compl. ¶

36.  The complaint, however, alleges no facts concerning any promise by Robinson to ensure the procurement of insurance in an amount satisfactory to Ameriswiss.  Perhaps for that reason, Robinson does not appear to address the insurance-coverage theory in its motion for summary judgment.

Under most circumstances, the court would be hesitant to grant summary judgment to a party that does not specifically request it.  But here, Ameriswiss cannot possibly prevail on its claim that Robinson breached the parties' agreement by failing to ensure the provision of insurance coverage satisfactory to Ameriswiss.  For starters, as with the breach-of-warranty claim, the claim stated in paragraphs 35 and 36 of Ameriswiss's complaint appears eminently susceptible to dismissal for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  The complaint nowhere alleges any facts which, if proven, would establish that Robinson agreed to make sure that there was adequate insurance in place to protect Ameriswiss's interest in its machines.

Moving to the summary-judgment record, Ameriswiss appears to hang its hat on: (1) the words "all inclusive" in the e-mail from Dunlop to Ms. Luscher; (2) a request from Ameriswiss's Paul Luscher for insurance coverage in the amount of $300,000; and (3) evidence from Robinson's expert concerning what Dunlop told

27

Mr. Luscher about the insurance coverage that was in place.
None of that creates a triable issue concerning the existence of
a promise by Robinson to provide, procure, or guarantee
insurance coverage.

First, as a matter of law, the two words "all inclusive" do
not establish a promise by Robinson to provide insurance
coverage for Ameriswiss's cargo in any amount, much less
whatever amount Ameriswiss might deem to be "appropriate."
Second, Mr. Luscher testified that he asked Robinson to provide
insurance coverage in the amount of $300,000, see Pl.'s Mem. of
Law, Luscher Dep. (doc. no. 49-2), at 89, but he also testified
that Dunlop told him that Robinson did not provide coverage for
used machines, see id. at 89, 100.  Thus, Mr. Luscher's request
for insurance is not evidence that Robinson agreed to provide
it.  Third, Ameriswiss's reliance on Robinson's expert's
testimony that Dunlop "told Mr. Luscher that there was insurance
in place," Pl.'s Mem. of Law (doc. no. 49-1), is entirely
misplaced.  The expert was unable to say when Dunlop made that
statement, see Pl.'s Obj., Ex. 2, Wentzell Dep. (doc. no. 49-2),
at 114, which makes the statement worthless as evidence that
Robinson promised to provide insurance, as a term of its
agreement with Ameriswiss.  Because Ameriswiss has produced no
evidence that Robinson ever agreed to provide or procure

insurance coverage for the machines Midway transported, Robinson is entitled to judgment as a matter of law on the second theory on which Ameriswiss bases its claim for breach of contract.

D. Remaining Issues

Several loose ends remain to be tied up. First, because Robinson is entitled to judgment as a matter of law on all of the claims asserted by Ameriswiss and MB Insurance, there is no need to address Robinson's request for summary judgment that its liability is limited to the amount Ameriswiss paid for the machines that were destroyed. Second, because Robinson is not liable to Ameriswiss, Robinson's cross claim against Midway for indemnification is dismissed. Third, Robinson has moved to strike portions of Ameriswiss's objection to summary judgment, but given the court's favorable ruling on Robinson's motion for summary judgment, its motion to strike is denied as moot.

## Conclusion

For the reasons given above, Robinson's motion for summary judgment, document no. 41, is granted. As a result, its motion in limine, document no. 50, and its two motions to strike, document nos. 54 and 55, are all denied as moot. The clerk of

the court shall enter judgment in accordance with this order and close the case.

    SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge


September 27, 2012

cc:   John F. Bisson, Esq.
      Wesley S. Chused, Esq.
      Fredric Paul Gallin, Esq.
      Mary K. Ganz, Esq.
      Frank J. Weiner, Esq.